THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR06-0079-JCC-3 |
| Plaintiff/Respondent, | ORDER |
| v. | |
| VU THANH TRAN, | |
| Defendant/Petitioner. | |

This matter comes before the Court on Petitioner Vu Thanh Tran's writ for coram nobis (Dkt. No. 224) and the Government's motion to seal (Dkt. No. 234). Having thoroughly considered the briefing and the relevant record, and finding oral argument unnecessary,[1] the Court GRANTS both the petition and motion for the reasons explained herein.

## I.    BACKGROUND

In September 2006, Petitioner pleaded guilty to conspiracy to distribute marijuana in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). (*See* Dkt. Nos. 98, 99, 124.) This Court sentenced him to 24 months of incarceration, followed by three years of supervised release. (Dkt. No. 170 at 2–3.) Petitioner served his sentence and was released in 2009. (*See* Dkt. Nos. 224 at 6, 227 at 5.) Based on the events that followed, he now asks to vacate his conviction and withdraw

---

[1] Each party has had a full opportunity to brief the issues presented. *See Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir. 1998).

ORDER
CR06-0079-JCC-3
PAGE - 1

his guilty plea. (*See generally* Dkt. No. 224.)

Petitioner is a lawful permanent resident; nevertheless, Immigration and Customs Enforcement ("ICE") arrested Petitioner in August 2025 during a regular immigration check in. (Dkt. No. 227 at 1, 6, 235 at 38.) ICE eventually freed Petitioner, upon the granting of a habeas corpus petition. *See Tran v. Bondi*, Case No. CV25-1897-JLR, Dkt. No. 18 (W.D. Wash. 2025). According to ICE, that arrest was based on a removal order itself based on Petitioner's now-vacated state crime. Thus, the only remaining basis for Petitioner's removal is the federal crime in this matter.

In an effort to resolve the circumstances impacting his immigration status, Petitioner now seeks a writ of error coram nobis, based on the alleged mis-advice he received from trial counsel here in 2006. (*See generally* Dkt. No. 224.) He alleges that, by informing Petitioner that the United States would "never deport [him] to Vietnam [because of his guilty plea in this matter]," counsel committed an error of the most fundamental character, making coram nobis relief appropriate. (*See* Dkt. No. 224 at 16.) The Government disagrees, arguing that (a) Petitioner should have attacked his conviction earlier, (b) Article III's case or controversy requirement is not met, and (c) the alleged error is not of the most fundamental character. (*See generally* Dkt. No. 232.)

## II.    DISCUSSION

A writ of coram nobis is an "extraordinary remedy [to be rendered] only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). To qualify for relief under the writ, Petitioner must satisfy each of the following: "'(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.'" *United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007) (quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)). Here, only prongs two and four are truly at

ORDER
CR06-0079-JCC-3
PAGE - 2

issue.

Neither party disputes that Petitioner satisfies the first prong. (*See* Dkt. Nos. 232 at 9, 236 at 6.) This makes sense, as the Ninth Circuit recognizes that coram nobis relief is appropriate when a petitioner "has served his sentence and is no longer in custody." *United States v. Kwan*, 407 F.3d 1005, 1009 (9th Cir. 2005) (internal citation omitted).[2] And prong three, regarding adverse consequences, is clearly satisfied. Admittedly, the Government says Petitioner "was subject to removal before this case," thus any adverse consequence stemming from his federal conviction is hypothetical and "manufactured."[3] (*See* Dkt. No. 232 at 15.) But the Ninth Circuit recognizes that "the *possibility* of deportation is an 'adverse consequence' sufficient to satisfy Article III's case or controversy requirement." *Kwan*, 407 F.3d at 1014 (internal citation and quotation marks omitted) (emphasis added). This Court, like its sister courts, adheres to that authority.[4]

Prong two (regarding timing) and four (whether the error is of a fundamental character) each present a closer call. (*See generally* Dkt. Nos. 232, 236.) Nevertheless, the Court finds that they do, indeed, support granting the relief sought.

### A. Valid Reasons Exist for Not Attacking the Conviction Earlier

Petitioner claims that his delay in seeking coram nobis relief is justified because, until his

[2] Other collateral challenges pursuant to 28 U.S.C. § 2255 or § 2241, for example, are not available. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989); *United States v. Reves*, 774 F.3d 562, 565 (9th Cir. 2014).

[3] The Government contends that, because Petitioner's removal order is predicated on a state court conviction, vacating his federal conviction will have no impact. (*See* Dkt. No. 232 at 15.) But Petitioner's state court conviction was vacated (*see* Dkt. No. 237-5 at 2–3), as such, his outstanding federal conviction appears to be the only basis for mandatory removal. (Dkt. No. 237-3) (e-mail from ICE Deputy Chief Counsel for Tacoma Sub-Office to Petitioner's counsel, "[a]t this time, Mr. Tran's convictions continue to render him removable and ineligible for relief.")

[4] *See, e.g.*, *United States v. Le*, 2021 WL 1691271, slip op. at 2 (W.D. Wash. 2021) ("[Petitioner] remains under threat of deportation, satisfying the case or controversy requirement of Article III"); *United States v. Phtsadakone*, 2025 WL 3771418, slip op. at 4 (W.D. Wash. 2025) ("the threat of deportation constitutes a continuing adverse consequence").

ORDER
CR06-0079-JCC-3
PAGE - 3

2025 ICE detention, he had no reason to believe that he was actually removable, or that his trial counsel's advice in 2006 was erroneous. (*See* Dkt. No. 236 at 7.) The Government counters that Petitioner knew he was removable in February 2009, when he sought to re-open a removal order issued against him in 2007 based on his state court conviction. (*See* Dkt. Nos. 232 at 10, 235 at 15–24.) And according to the Government, a delay of this magnitude forecloses coram nobis relief. (*See* Dkt. No. 232 at 11.)

But the relevant inquiry is whether a petitioner has valid or sound reason for not attacking a conviction earlier—not simply the duration of any delay in doing so. *See Kwan*, 407 F.3d at 1012 (explaining that coram nobis relief is not subject to a particular statute of limitations, and the burden rests with petitioner to demonstrate valid or sound reasons for delay). Meaning, the inquiry is context-dependent. And the context here supports the notion that Petitioner had valid reasons for not attacking his conviction sooner.

By way of background, Petitioner was convicted in state court in 2000 for selling marijuana. (*See* Dkt. Nos. 227 at 3, 236 at 7.) Recently, in December 2025, Petitioner successfully vacated that conviction. (*See* Dkt. No. 237-5 at 2–3.) Separately, in 2006, Petitioner was charged here for his role in a larger marijuana conspiracy. (*See generally* Dkt. No 1.) During the pendency of this case, Petitioner received leave to visit his dying grandmother in Vietnam. (*See generally* Dkt. No. 67.) Upon his return in July 2006, Petitioner's U.S. Alien Resident Card was confiscated at the port of entry, and he was served a notice to later appear before immigration authorities. (*See* Dkt. Nos. 235 at 3–5, 227 at 4.) Petitioner then failed to appear. (*See* Dkt. No. 235 at 18.)

As a result, Petitioner was ordered removed *in abstentia*, notice of which was mailed to his home address. (*See id.* at 6.) He claims that he never received the notice and was otherwise unaware of the removal order. (*See* Dkt. No. 227 at 4.) Only in 2009, after having been transferred to ICE custody following the completion of his sentence in this matter, was Petitioner made aware. (*See* Dkt. No. 235 at 15–28.) Then, acting *pro se*, Petitioner unsuccessfully sought

ORDER
CR06-0079-JCC-3
PAGE - 4

to re-open his removal proceeding. (*See id.*) Thus, until 2009, the record suggests Petitioner was unaware that he was removable. He only realized otherwise in 2009. But even then, he had no immigration counsel and likely did not fully appreciate the consequences of his prior conviction(s). Moreover, even then he assumed, based on the advice of prior counsel, that functionally he remained unremovable because he "is a national of Vietnam, which does not accept any person removed from the [U]nited States." (Dkt. No. 235 at 18.)

It is important to note that between 2006 and 2025, Petitioner had no reasonable expectation that he could be deported to Vietnam because it refused to repatriate Vietnamese immigrants from the United States (or did so only rarely).[5] (*See id.* at 21.) Nor could Petitioner have anticipated the unprecedented uptick in third-country deportations, a tactic only recently used by the administration.[6] All of this demonstrates that Petitioner had valid reasons for not attacking his conviction earlier.

The Ninth Circuit does not define what constitutes "valid or sound reasons" for not attacking a conviction earlier. *See Kwan*, 407 F.3d at 1013. But it does define circumstances where delay is unjustifiable. *See United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020). Delay in attacking one's conviction is unjustified where a petitioner has "delayed for no reason

---

[5] Between the end of the Vietnam War and 2008, Vietnam refused to repatriate *any* Vietnamese immigrant ordered removed from the United States. *See Trinh v. Homan*, 466 F. Supp .3d 1077, 1083 (C.D. Cal. 2020). In 2008, the countries reached a diplomatic agreement: Vietnam would repatriate persons who arrived in the United States after, but not before, July 1995. *See id.* Petitioner arrived in the United States in approximately 1984. (*See* Dkt. No. 227 at 1.) In 2020, the countries signed a Memorandum of Understanding setting forth procedures for removal of pre-1995 Vietnamese immigrants; however, between 2021 and 2023, the United States deported only four pre-1995 Vietnamese immigrants. *See Bui v. Scott*, 2025 WL 3250962, slip op. at 3 (W.D. Wash. 2025).

[6] *See, e.g.*, Ximena Bustillo, *The White House is deporting people to countries they're not from. Why?*, NPR News (June 1, 2025), *available at* https://www.npr.org/2025/06/01/g-s1-69780/trump-deportations-south-sudan; Giselle Ewing, *Trump launches next round of third country deportations with new flights to Eswatini*, Politico (July 16, 2025), *available at* https://www.politico.com/news/2025/07/16/trump-third-country-deportations-eswatini-00455757.

ORDER
CR06-0079-JCC-3
PAGE - 5

whatsoever," seems to be abusing the writ, or where a petitioner was "uncertain about the applicable law." *Id.* at 963. Conversely, delay may be justifiable where "petitioners did not have a reasonable chance to pursue their claim earlier due to the *specific circumstances* they faced," in which case "[d]elay during the time when such circumstances existed may be justified." *Id.* at 961 (emphasis added).

The Court is convinced Petitioner did not delay the instant attack on his conviction without reason, nor is he abusing the writ or basing his petition on uncertainty in the law. Instead, it would seem that Petitioner lacked a *reasonable* chance to attack his conviction earlier, given the *specific circumstances* he faced, including the following:

- Trial counsel in his state case never advised Petitioner of any immigration consequences stemming from his conviction, (*see* Dkt. No. 237-4 at 3);

- His U.S. Alien Resident Card was confiscated, but he was not arrested upon reentering the United States in 2006, (*see* Dkt. No. 227 at 4);

- Trial counsel in his federal case misled Petitioner by suggesting he could "never" be removed to Vietnam, (*see* Dkt. Nos. 226-6 at 2, 227 at 4);

- Petitioner was released from ICE custody in 2009 (after serving his federal sentence) because there was not a significant likelihood that he would be removed to Vietnam in the foreseeable future, (*see* Dkt. No. 235 at 38);

- Petitioner attended regular check-ins with ICE for 15 years, and was never arrested or informed that the likelihood of his removal changed, (*see* Dkt. No. 227 at 5);

- Vietnam and the United States had a tenuous diplomatic relationship between 2000 and 2021, making removal very unlikely; and

- Petitioner received (in error) a United States Passport in 2012, affirming his mistaken belief that he was a United States citizen and thus never removable, (*see* Dkt. Nos. 237 at 1, 237-1 at 2, 237-2 at 5).

These specific circumstances warrant the extraordinary remedy of coram nobis relief.[7]

---

[7] The Court is not persuaded by the authorities relied on by the Government to assert Petitioner has no valid reasons for delaying the attack on his conviction. For instance, the petitioner in *United States v. Sanchez-Ramirez* knew he was removable but delayed seeking coram nobis relief because he thought he "had a chance of avoiding deportation in the immigration courts, so he proceeded with that process first." 2020 WL 1550628, slip op. at 3 (W.D. Wash. 2020). Those

ORDER
CR06-0079-JCC-3
PAGE - 6

**B.  Whether the Alleged Error is of the Most Fundamental Character**

Lastly, Petitioner argues that the mis-advice he received here in 2006 is the kind of fundamental error that coram nobis relief is intended to cure. (*See* Dkt. No. 224 at 15–17.) The Government argues that Petitioner cannot establish the elements of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), thus no fundamental error occurred. (*See* Dkt. No. 232 at 11–15.)

The Ninth Circuit recognizes the "fundamental error" prong of coram nobis analysis is satisfied where a petitioner establishes that they received ineffective assistance of counsel. *Kwan*, 407 F.3d at 1014. To prevail on such a claim, Petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness; and, (2) that deficiency prejudiced him. *Id.* at 1015 (citing *Strickland*, 466 U.S. at 688). Affirmative misrepresentations regarding immigration consequences can constitute ineffective assistance of counsel. *See United States v. Chan*, 792 F.3d 1151, 1158 (9th Cir. 2015). "Where . . . counsel has not merely failed to inform, but has effectively misled, his client about immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence." *Kwan*, 407 F.3d at 1015–16.

Petitioner's declaration that trial counsel advised him that "the United States would never deport" him "to Vietnam, which was a hostile country" (Dkt. No. 227 at 4) corroborates trial counsel's admission own that, at that time, he "advise[d] Vietnamese clients who were not naturalized US citizens that Vietnam was not accepting deportations or extraditions with the US." (Dkt. No. 226-6 at 2.) The facts before the Court thus suggest that Petitioner was effectively misled about immigration consequences stemming from his conviction, making his

---

facts are not present here. Nor is *Kroytor* particularly analogous. There, the Ninth Circuit rejected the argument that lack of clarity in the law is a valid reason to delay filing a coram nobis petition. 977 F.3d at 963. Petitioner here was facing circumstances that amount to more than a mere misunderstanding of the law—he was effectively misled into believing he was not removable.

ORDER
CR06-0079-JCC-3
PAGE - 7

counsel's performance objectively unreasonable under *Kwan*.

As for prejudice, Petitioner asserts that, had he known about the chance of deportation, he would have rejected his plea deal and opted for trial. (*See* Dkt. No. 227 at 4.) The Government argues that Petitioner cannot show prejudice without contemporaneous evidence demonstrating that he would have chosen to go to trial over accepting his plea. (*See* Dkt. No. 232 at 14.) Indeed, under *Strickland*, the determinative question is whether there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. *Kwan*, 407 F.3d at 1017 (citing *Glover v. United States*, 531 U.S. 198, 202–03 (2001)). A plea should not be upset "solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the Court looks to contemporaneous evidence to ascertain the likelihood that the Petitioner would have chosen differently. *See id.*

The Government contends that it would have been "highly illogical" for Petitioner to opt for trial instead of accepting a plea, given his prior drug conviction, the mandatory minimum sentence for his initial federal charge, and his status as an *already* removable non-citizen. (*See* Dkt. No. 232 at 14.) It also claims that a federal conviction was "a virtual certainty" had Petitioner gone to trial. (*Id.*) Nevertheless, Petitioner unequivocally states he would have opted for trial had he known his plea guaranteed deportation, because "staying in the United States meant everything" to him. (*See* Dkt. No. 227 at 4–5.) Petitioner corroborates this sentiment by expressing *why* staying in the United States was so important: his entire nuclear family lived in Washington, he had only ever lived in the United States (but for his first four years), he cannot read or write Vietnamese (*see* Dkt. No. 227 at 2), and his only familial connection in Vietnam (his grandmother) was ailing and near death. (*Id.* at 5.) Moreover, Petitioner had gainful employment in the United States, which he maintained even while on bond pending the outcome of his federal case. (*Id.* at 3.)

Fundamentally, it is neither irrational nor unfathomable for someone in Petitioner's

ORDER
CR06-0079-JCC-3
PAGE - 8

position to bet everything on trial. *See United States v. Phtsadakone*, 2025 WL 3771418, slip. op. at 10 (citing *United States v. Rodriguez-Vega*, 797 F.3d 781, 789 (9th Cir. 2015) ("It is often reasonable for a non-citizen facing nearly automatic removal to turn down a plea and go to trial risking a longer prison term, rather than to plead guilty to an offense rendering [his] removal virtually certain")). In *Lee*, for example, the Supreme Court articulated that, when a defendant is weighing certainty of deportation (here, accepting the plea) against *almost* certainty (here, going to trial), it is not irrational for a defendant to choose trial. 582 U.S. at 371. Perhaps this is because "for noncitizens, 'preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Id.* at 370 (quoting *Padilla*, 559 U.S. at 368) (internal quotation marks omitted). The contemporaneous facts here demonstrate that, for Petitioner, *any* chance of staying in the United States would have deterred him from taking a deal that he knew would now result in his removal. For this reason, it seems clear that counsel's deficiencies prejudiced him. Accordingly, the Court finds that Petitioner satisfies the fourth and final coram nobis prong.

Finally, equitable considerations also support granting the writ, which exists "to achieve justice." *Morgan*, 346 U.S. at 511. Petitioner was a young child when his family brought him to the United States. He has built a life in this country. And since serving the sentence here (for a non-violent marijuana crime), he has lived a law-abiding life, which includes marrying a U.S. citizen, starting a family, and running a successful small business. The Government, for its part, made no effort to remove Plaintiff until recently. The pro-social life he made stands to be upended. This is precisely the scenario which compels action by this Court to achieve justice. In sum, the equities favor granting the writ.

## C. Motion to Seal

"There is a strong presumption of public access to the court's files." LCR 5(g); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, while the public has a right to inspect and copy public records, including those from judicial proceedings, this right is not

ORDER
CR06-0079-JCC-3
PAGE - 9

absolute. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). It must yield when sealing a document serves a compelling interest that is substantially likely to be harmed if the document is not sealed and there are no less restrictive alternatives for protecting the interest. *Id.*

Through a motion to seal (Dkt. No. 234), the Government requests to seal Exhibit 1 to the declaration of Sarah Vogel (Dkt. No. 235), filed in support of the Government's opposition to Petitioner's petition for coram nobis (Dkt. No. 232). It contains immigration records and a presentence report reflecting Petitioner's personal identifying information. (*See* Dkt. No. 235.) The Court finds that sealing the exhibit is the least restrictive alternative for protecting this information.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of coram nobis (Dkt. No. 224) and the Government's motion to seal (Dkt. No. 234), VACATES Petitioner's conviction and STRIKES his guilty plea, DIRECTS the Government to notify the Court within 60 days how it wishes to proceed,[8] and DIRECTS the Clerk to maintain Docket Number 235 under seal.

DATED this 23rd day of April 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[8] *See United States v. St Cyr*, 804 F. Supp. 3d 1, 6 (D.D.C. 2025) (vacatur of judgment restores defendant's innocence but does not resolve the underlying criminal charge); *see also Hewitt v. United States*, 606 U.S. 419, 431 (2025) ("A criminal defendant whose judgment of conviction has been vacated . . . is to be treated going forward as though he were never convicted" but it does not inherently dismiss the underlying charge.).

ORDER
CR06-0079-JCC-3
PAGE - 10